IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | |
|---|---|
| KERRY REX MIESSNER, | Cause No. CV 05-66-M-DWM-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| SHERIFF/WARDEN CASTLE; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

_____

| | |
|---|---|
| KERRY REX MIESSNER, | Cause No. CV 07-34-M-DWM-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| DAN O'FALLON, Warden,   Cascade County Regional Prison; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

_____

These two habeas cases filed under 28 U.S.C. § 2254 come before the Court following

somewhat unconventional proceedings in state court and in this Court.  They are addressed together

because both challenge Miessner's 2003 conviction in Montana's Twenty-First Judicial District

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 1

Court.  The second petition also challenges a probation revocation that occurred at the same time.

Because there are two petitions, the Court initially believed that Miessner must obtain leave from the Ninth Circuit Court of Appeals to proceed with a second petition.  However, further research suggests that a second petition filed in this District before adjudication of the first petition is not a second petition within the meaning of 28 U.S.C. § 2244.  See, e.g., Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) ("[B]efore a motion or petition can be regarded as successive, there must be some prior adjudication on the merits or a dismissal with prejudice."); cf. Fetterly v. Paskett, 997 F.2d 1295, 1301-02 (9th Cir. 1994).  Additionally, Miessner filed his first habeas petition while a direct appeal was pending in the Montana Supreme Court and a postconviction petition was pending in the trial court.  The second petition was filed while the postconviction petition was still pending in the trial court.  Under these circumstances, the Court does not believe that 28 U.S.C. § 2244(b) applies.  See Slack v. McDaniel, 529 U.S. 473, 487 (2000) ("A petition filed after a mixed petition [i.e., one containing both exhausted and unexhausted claims] has been dismissed . . . before the district court adjudicated any claims is to be treated as 'any other first petition' and is not a second or successive petition.").  Therefore, both petitions will be considered together.

Miessner is a state prisoner proceeding pro se.

**I. Background**

The Court has reconstructed the procedural history of Miessner's case in state court from copies of documents he has submitted to this Court.

On November 16, 2002, an officer with the Stevensville Police Department, Lance Foster, spotted an unoccupied vehicle parked in front of a garage bay door at the Stevensville Fire Department.  He ran a check on the vehicle and discovered it was registered to Miessner.  Foster

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 2

knew both Miessner and his girlfriend, Jolene Stiefel.  He believed that Miessner, who was on

probation, was not supposed to drive, and he knew that Stiefel did not have a driver's license.  He

went to Miessner's home three blocks away and knocked on the door.  After Miessner answered the

door, Stiefel cried out and made her way to the door.  Foster observed that her hands were duct taped

together and she was in an "emotional state."  Stiefel eventually accompanied Foster to the Police

Department where she indicated that Miessner had held her down and duct taped her hands, feet, and

mouth.  At that time, she refused to give a formal written statement.  Foster concluded that he lacked

sufficient probable cause to arrest Miessner at that time, due in part to Stiefel's refusal to provide

a formal statement.  See Order ¶ 3, State v. Miessner, No. 04-877 (Mont. Jan. 24, 2006) (unpublished

mem. disp.) (05-66 doc. 12 att. 1);[1]  see also  Foster Report at 0032-0035 (05-66 doc. 1 first

attachment).

On November 20, 2002, Miessner, accompanied by friends, arrived home to find the doors

to his residence locked.  Angered by this, he kicked in the back door and threatened to harm Stiefel.

On that occasion, she gave a formal statement to the police regarding both incidents.  She said that

Miessner's friends had to forcefully restrain him from physically assaulting her on the 20th and said

that, on the 16th, Miessner had struck her in the jaw, knocking her to the floor, before he bound her

with duct tape.  See Order ¶ 4, Miessner, No. 04-877.

On November 21, 2002, the 911 Center at the Sheriff's Office in Ravalli County received a

document titled "Authorization to Pick Up and Hold Probationer."  Miessner's violations were listed

as "Consumption of Alcohol," "Partner/Family Member Assault," and "Kidnapping."  The form was

---

[1]  "05-66 doc. 12 att. 1" refers to document number 12 in No. CV 05-66-M, attachment number 1 as set forth in the docket entry.  All further citations to the record follow this format.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 3

signed by Probation and Parole Officer John T. Hodge.  See Authorization (07-34 doc. 2 Ex. E).

On November 21, 2002, police responded to a call regarding a strange vehicle in a private driveway and found Miessner asleep in the cab of his truck.  Miessner was arrested under the Authorization.  After being read his Miranda rights, he told the police that he had bound Stiefel's hands and mouth with duct tape on the 16th and had kicked open the door to his residence on the 20th.  His probation officer authorized a breath test, which yielded a blood alcohol content of 0.153, well over the legal limit at that time of 0.10.  See Order ¶ 5, Miessner, No. 04-877.

On November 26, 2002, the State requested leave to file an Information charging Miessner with aggravated kidnaping, a felony violation of Mont. Code Ann. § 45-5-303(1)(c) (2001), and two counts of partner or family member assault, misdemeanor violations of Mont. Code Ann. § 45-5-206(1)(a), (c) (2001).[2]  The Honorable Jeffrey H. Langton found probable cause to support the charges and granted leave.  Shortly thereafter, the State filed a notice to have Miessner designated a persistent felony offender.  See Order ¶ 6, Miessner, No. 04-877.

On November 29, 2002, the State filed a petition to revoke Miessner's probation, which was imposed in a previous case, State v. Miessner, No. DC 95-77.  The petition alleged the incidents of November 16, 20, and 21, as well as three instances of drinking on March 21, 2001, April 2, 2002, and November 10, 2002, as the bases for revocation.  See Petition for Revocation, Miessner, No. DC 95-77 (Mont. 21st Jud. Dist. Nov. 29, 2002) (07-34 doc. 2 Ex. B1, B3-4).  The Information was filed on the same day.  See Information, State v. Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Nov.

---

[2]  Subsection (1)(a) requires proof of bodily injury and was charged in connection with the November 16 assault. Subsection (1)(c) requires proof of reasonable apprehension of bodily injury and was charged in connection with the November 20 assault.  See Information, State v. Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Nov. 29, 2002) (07-34 doc. 2 Ex. F2-3).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 4

29, 2002) (07-34 doc. 2 Ex. F1).

On December 31, 2002, Miessner wrote a letter to Judge Langton, complaining that he did not believe Mark McLaverty, who had been appointed to represent him, had enough time to prepare a defense in his case. The trial court determined that McLaverty's representation would continue. See Order, Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Sept. 22, 2003) (07-34 doc. 2 Ex. K3-4).

On February 5, 2003, the trial court held a hearing on the petition to revoke. Judge Langton found multiple violations. On February 12, 2003, he revoked Miessner's probation, sentencing him to serve three years in prison with credit for time served and without credit for time spent on probation "due to the multiplicity of his violations." Minute Entries, No. DC 95-77 (07-34 doc. 2 Exs. C1-2, D1-2).

On April 18, 2003, the State filed an Amended Information that added the charge of driving under the influence ("DUI"), a violation of Mont. Code Ann. § 61-8-406(1)(a) (2001), to the aggravated kidnapping and partner assault charges already pending against Miessner. Because he was being held at the Montana State Prison, Miessner was not arraigned on the DUI charge. See Order ¶ 6, Miessner, No. 04-877; see also Order at 4, Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Sept. 22, 2003) (07-34 doc. 2 Ex. K4).

On April 30, 2003, McLaverty wrote Miessner a letter stating that he had interviewed all the principal witnesses and cross-examined them in Miessner's presence at the revocation hearing, interviewed Miessner and viewed the crime scene, and prepared a trial notebook, jury instructions, and a verdict form. McLaverty concluded, "At this time I am ready to go to trial." On the next page, however, McLaverty strongly advised Miessner to change his position and allow him to ask the State whether it would still be willing to make a plea offer. McLaverty explained that "the state will point

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 5

out your repeated attempts to influence [Stiefel] not to testify against you at trial, as evidenced by your letter to her just last week, in violation of the court's order that you not have any contact with her." Letter from McLaverty to Miessner dated Apr. 30, 2003, at 1-2 (07-34 doc. 2 Ex. H1-3).

On May 9, 2003, the Friday before trial was set to begin,[3] the parties executed a plea agreement. The charge of aggravated kidnaping was reduced to kidnaping. Additionally, the State agreed to ask that Miessner receive concurrent sentences on all charges and that he receive only the statutory minimum of five years consecutive on the persistent felony offender designation. See Order ¶ 7, Miessner, No. 04-877.

On the same day, Miessner appeared in open court before Judge Langton and pled guilty to kidnaping, two counts of partner or family member assault, and DUI. Miessner had signed an Acknowledgment of Waiver of Rights, and he indicated at the hearing that he had fully understood that document. During the hearing, Miessner was informed of and acknowledged that he understood the maximum penalties he faced for each of the charges as well as the minimum and maximum sentence enhancement possible for a designated persistent felony offender. Miessner also acknowledged that he was giving up a variety of constitutional rights by entering a guilty plea. Miessner indicated that he had not been forced, pressured or threatened into pleading guilty and he expressed satisfaction with the assistance provided by his counsel. Finally, Miessner admitted the facts underlying the crimes to which he wanted to plead guilty. See id.; see also Change of Plea Tr. at 14:2-15:14 (05-66 doc. 5 attachment).

The next day, Miessner sent a letter to Judge Langton, seeking appointment of new counsel and asking to withdraw his guilty plea. Miessner said that he had never been arraigned on the DUI

---

[3] See Order at 4, Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Sept. 22, 2003) (07-34 doc. 2 Ex. K4).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 6

charge.  He also claimed that he pled guilty under duress and that his attorney contributed to his duress by failing to use Foster's Report to argue that the State lacked probable cause to arrest him and by relaying threats made by the prosecutor that Miessner would get "hammered" as a persistent felony offender.  Judge Langton granted Miessner's request for new counsel but did not rule on his request to withdraw his guilty plea.  With the assistance of his new attorney, Sasha Brownlee, Miessner filed a proper motion to withdraw his guilty plea.  In that motion, he contended that he should be permitted to withdraw his plea pursuant to Mont. Code Ann. § 46-16-105(2) and that he did not knowingly plead guilty because he had not been arraigned on, nor was he aware of, the DUI charge.  After a hearing at which several witnesses testified, the trial court denied the motion.  See Order ¶ 8, Miessner, No. 04-877; see also Order at 1-17, Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Sept. 22, 2003) (07-34 Ex. K1-17).

On January 28, 2004, a sentencing hearing was held.  The District Court sentenced Miessner to ten years for kidnaping and a consecutive five-year term, all suspended, for being a persistent felony offender.  The sentence was imposed to run consecutively to Miessner's sentence on his probation revocation in DC-95-77.  On the misdemeanors, Miessner was sentenced to a total of 323 days and was given credit for 323 days served.  The written Judgment and Commitment was entered on March 15, 2004.  See id. ¶ 9; Judgment, Miessner, No. DC 02-172 (Mont. 21st Jud. Dist. Mar. 15, 2004) (07-34 doc. 2 Ex. G3-4).

On April 5, 2004, Brownlee timely filed a notice of appeal on Miessner's behalf.  See Notice of Appeal, Miessner, No. DC 02-172 (Mont. Apr. 5, 2004) (05-66 doc. 18).

At some point in the fall of 2004, Miessner filed a pro se petition for writ of habeas corpus in the Montana Supreme Court.  On December 7, 2004, the Montana Supreme Court forwarded the

petition to the trial court, directing it, pursuant to <u>Schrapps v. Mahoney</u>, 36 P.3d 338, 338-39 (Mont. 2001), to treat the petition as one for postconviction relief and to deem it filed on the date Miessner filed it in the Montana Supreme Court.  <u>See</u> Order paras. 2, 4, <u>Miessner v. Mahoney</u>, No. 04-773 (Mont. Dec. 7, 2004) (05-66 doc. 18 att. 2).

On December 9, 2004, the trial court appointed Mathew Stevenson to represent Miessner "in all matters pertaining to this action in this court. . . . including any proceeding upon direct appeal." Order Appointing Counsel at 1, <u>Miessner</u>, No. DC-02-172 (Mont. 21st Jud. Dist. Dec. 9, 2004) (05-66 doc. 18 att. 2)

On January 19, 2005, Judge Langton ordered the State to respond to Miessner's "reclassified" postconviction petition.  <u>See</u> Order at 1, <u>Miessner</u>, No. DC-02-172 (Mont. 21st Jud. Dist. Jan. 19, 2005) (05-66 doc. 18 att. 2).  On March 3, 2005, on the State's motion, Judge Langton stayed the postconviction proceedings pending determination of Miessner's direct appeal.  <u>See</u> Order at 1, <u>Miessner</u>, No. DC-02-172 (Mont. 21st Jud. Dist. Mar. 3, 2005) (05-66 doc. 18 att. 2).

On March 17, 2005, Judge Langton clarified that Stevenson was appointed for the direct appeal, not for the postconviction proceedings.  <u>See</u> Mem. at 1-2, <u>Miessner</u>, No. DC-02-172 (Mont. 21st Jud. Dist. Mar. 17, 2005) (05-66 doc. 18 att. 2); <u>see also</u> Mot. for Clarification at 1-2, <u>Miessner</u>, No. DC-02-172 (Mont. 21st Jud. Dist. Mar. 10, 2005) (05-66 doc. 18 att. 5).[4]

On March 30, 2005, on Stevenson's motion as supported by documents received from Meissner, the Montana Supreme Court relieved Stevenson of the obligation to represent Meissner on direct appeal.  At that point, Miessner was given time to file an opening brief pro se.  <u>See</u> Order at 2, <u>Miessner</u>, No. 04-877 (Mont. Mar. 30, 2005) (05-66 doc. 18 att. 5); <u>see also</u> Letter from

---

[4] The docket entry does not show a fifth attachment, but clicking on the document number will bring it up.

Miessner to Stevenson dated Feb. 22, 2005, at 1-2 (05-66 doc. 18 att. 5).

On May 2, 2005, while Miessner's direct appeal was pending in the Montana Supreme Court, he filed his first federal habeas petition in this Court.

On May 20, 2005, United States Magistrate Judge Leif B. Erickson recommended that Miessner's federal habeas petition be dismissed for failure to exhaust state judicial remedies. See Findings and Recommendation (05-66 doc. 7) at 4.

On January 24, 2006, the Montana Supreme Court affirmed Miessner's convictions and sentence on direct appeal. See Order ¶ 20, Miessner, No. 04-877. Rehearing was denied on March 14, 2006. See Notice of Filing (05-66 doc. 14) at 3.

On March 31, 2006, Chief United States District Judge Donald W. Molloy reviewed Judge Erickson's Findings and Recommendation. In light of the Montana Supreme Court's intervening decision on direct appeal, Judge Molloy resubmitted the matter to Judge Erickson for Supplemental Findings and Recommendation. See Order (05-66 doc. 13) at 2, ¶ 1. The Court thereafter issued orders to determine which of Miessner's claims were properly exhausted and to ascertain the appropriate procedural posture of this case and Miessner's second petition, which was filed on October 30, 2006.

On March 18, 2008, the trial court denied all of the claims in Miessner's postconviction petition and in his motion to withdraw his guilty plea. See Order at 1-20, Miessner, No. DC-02-172 (Mont. 21st Jud. Dist. Mar. 18, 2008) (05-66 doc. 28 att. 2 & 3). Miessner seeks "direction" as to whether he should appeal, because, he claims, there is some question about the status of his

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 9

application to the Ninth Circuit Court of Appeals for leave to file a second or successive petition.[5]
See Status Report (05-66 doc. 28) at 2.  However, there is no question about the status of the
application.  It was denied.  See Miessner v. O'Fallon, No. 07-72268 (9th Cir. Aug. 29, 2007) (05-66
doc. 23 att. 1).

## II. Miessner's Allegations

Miessner's claims fall into six categories.  Claims in No. CV 05-66-M are referred to by
letter.  Claims in No. CV 07-34-M are referred to by number.

First, Miessner contends that there was no probable cause to support the charges of
aggravated kidnaping and partner or family member assault arising from the incident on November
16, 2002, as reported by Officer Foster.  He also claims that he could not be arrested on those
charges.  Miessner's Claims B, C, D, E, H, I, J, K, L, M, N, parts of O and P, and S fall into this
category.

Second, Miessner claims his guilty plea was invalid because the State did not dismiss a
charge, there was no reduction in the sentence under the plea agreement, and he was not arraigned
on the DUI charge (Claim O).  He also claims (Claim P) that the plea was invalid because his plea
was "induced" by his attorney and counsel for the State and (Claim Q) that he was "threatened" with
a life sentence.  He also claims that the trial court was not authorized to impose conditions of the
suspended sentence as conditions of probation without reciting the conditions in open court and that
these conditions made his guilty plea void (Claim U(2)).  Relatedly, he contends (Claim 5) that his

---

[5] The Court is not aware of any law obligating the judges of the Ninth Circuit to affix hand signatures or dates to their orders.  That Miessner's application was not necessary was an error on this Court's part.  That error is corrected by addressing all of Miessner's claims on the merits here.
   Of course, if the Court was correct in its first impression that Miessner required leave to file his second petition, then all of the claims in that petition are barred by the Ninth Circuit's denial of leave.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 10

restraint of Stiefel was a lawful "citizens arrest" of Stiefel for auto theft and driving under the influence.  Finally he claims that he was unaware of the requirement that he register as a violent offender.  <u>See</u> Supp. Grounds (05-66 doc. 5) at 2.

Third, Miessner alleges irregularities in the state proceedings.  He claims (Claim F) that the parties and the trial court were "in contempt" of an order requiring a settlement conference and (Claim R) that the trial court should have considered the grounds he offered pro se in his first motion to withdraw his guilty plea.  He contends (Claim T) that the persistent felony offender designation should have been filed as a separate charge and that he could not be sentenced as a persistent felony offender because he did not plead guilty to the designation.  He also asserts (Claim U(1)) that he was deprived of the procedures required when a mandatory minimum sentence is imposed.  Finally, he claims (Claim 6) that the Information was "defective" because the phrase "by threatening to use physical force, with the purpose of inflicting bodily injury" was not sufficiently specific to allow him to mount a defense.

Fourth, Miessner claims (Claim G) that his Sixth Amendment right to the effective assistance of counsel was violated when the trial court denied a request for new counsel.  He also claims (Claim 7) that Mark McLaverty was ineffective because other cases have found his performance met the first prong of the <u>Strickland</u> test and because he advised Miessner to plead guilty whereas another attorney, Brownlee, thought that Miessner should be allowed to withdraw his guilty pleas.  Finally, he contends (Claim 9) that the State of Montana generally provides ineffective assistance of counsel.

Fifth, Miessner raises several claims regarding the revocation of his probation.  He claims (Claim A) that he was accused of aggravated kidnaping and partner/family member assault solely to facilitate his arrest for a probation violation.  In his second petition, he contends (Claims 1, 2, and

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 11

3) that his revocation hearing amounted to a "bench trial" and so precluded, on Double Jeopardy or other grounds, any further prosecution.  He also claims (Claim 4) that a "misstatement" in the County Attorney's petition to revoke his probation rendered that document "fatally flawed."

Sixth, Miessner asserts (Claim 8) that Judge Langton's "problem with alcohol," as demonstrated by newspaper articles, divested the trial court of jurisdiction or otherwise affected the validity of the proceedings against him.

## III. Analysis

Having reviewed Miessner's claims in light of all of the documents filed in each of these two cases, the Court is prepared to make a recommendation on the merits of both petitions.  Although some or all of Miessner's claims may be barred on procedural grounds, such as failure to exhaust and procedural default, it is clear that he does not allege any colorable federal claim and is not entitled to relief on the merits.  Accordingly, it is more efficient to proceed to the merits.  See, e.g., 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

Federal habeas relief is available only to petitioners who show that they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

### A. Arrest and Probable Cause

Many of Miessner's claims in his first petition begin with an allegation that the trial court lacked "subject-matter jurisdiction" or "statutory authority" to arrest or prosecute him because there was no probable cause to support the charges of aggravated kidnaping or partner/family member assault.

### 1. Probable Cause to Prosecute

The United States Constitution does not protect a defendant against criminal trial without

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 12

probable cause.  See, e.g., Albright v. Oliver, 510 U.S. 266, 268 (1994) ("Petitioner asks us to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.  We decline to do so."); see also id. at 272-74.  Nor is there any federal constitutional right guaranteeing an accused an opportunity to challenge a finding of probable cause to prosecute.  See, e.g., United States v. Williams, 504 U.S. 36, 52 (1992) ("neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented.").

There was no procedural error in the manner in which the prosecution was initiated. Miessner admits that the State filed a motion for leave to file an Information and that the trial court granted the motion two days later.  See Pet. (05-66 doc. 1) at 19, ¶ N; see also Order ¶ 6, Miessner, No. 04-877.  He complains that the motion was not "litigated" and that the State's motion for leave to file was granted "two days after the State submitted its motion."  But that is not surprising.  The State need not provide an opportunity to litigate the *filing* of criminal charges.  Montana law authorizes the commencement of a prosecution by judicial leave to file an Information.  See Mont. Code Ann. §§ 46-11-101(3), -102(1) (2001).  Neither federal nor State law gave Miessner a right to contest the filing of the Information.  An accused "is not entitled to judicial oversight or review of the decision to prosecute."  Albright, 510 U.S. at 274 (quoting Gerstein v. Pugh, 420 U.S. 103, 118-19 (1975)).

Finally, of course, a police officer's determination that probable cause is lacking has no legal effect whatever on whether charges may be filed or a conviction obtained or a sentence imposed. That is true as a matter of law, but Miessner also misrepresents the facts.  The kidnaping and assault charges were based on a statement made by Stiefel four days after Officer Foster wrote his initial

report.

## 2. Probable Cause to Arrest

The United States Constitution certainly protects Miessner from arrest and detention without probable cause.  See U.S. Const. Am. IV.  But even assuming, for the sake of argument, that Miessner's arrest was unlawful, an unlawful arrest does not divest a trial court of subject-matter jurisdiction over a criminal prosecution. "The jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it." Lascelles v. Georgia, 148 U.S. 537, 544 (1893), quoted in Harden v. Pataki, 320 F.3d 1289, 1296 (11th Cir. 2003).  Cf. Wallace v. Kato, 127 S. Ct. 1091, 1096-97 (2007) (reasoning that statute of limitations for false arrest or false imprisonment commences when detention becomes lawful by institution of legal proceedings).  An unlawful arrest might result in the exclusion at trial of evidence gained from the arrest, such as the statements of the accused or the fruits of a search incident to the arrest.  That decision, however, is up to the trial court – which plainly has jurisdiction to make it.[6]

## 3. Conclusion

No colorable federal claim arises from Miessner's contentions that the trial court lacked subject-matter jurisdiction because his arrest, his prosecution, and/or the revocation of his probation

---

[6] Miessner's claim that he did not have a probable cause hearing within 36 hours of his arrest on a probation violation refers to the Montana Supreme Court's decision in State v. Giddings, 29 P.3d 475 (Mont. 2001).  Giddings held that a state district court lacked jurisdiction to revoke probation if the probationer was arrested on a bench warrant but did not receive a probable cause hearing before a probation and parole officer within 36 hours of his arrest.  See id. at 477 ¶¶ 18-19.  Anyone reading that sentence will say that it cannot be correct.  A bench warrant exemplifies the issuing judge's determination of probable cause.  Giddings, however, relied on the Montana Legislature's plain language in the 1999 version of Mont. Code Ann. § 46-23-1012(4) (referring to subsection (1)).

After Giddings was decided on April 26, 2001, the Montana Legislature revised the statute.  At the time of Miessner's arrest, it did not require a probable cause hearing before a probation and parole officer within 36 hours of a probationer's arrest on a bench warrant.  The revision was effective on May 1, 2001.  See Mont. Code Ann. § 46-23-1012(1) (2001); 2001 Mont. Laws ch. 493, § 5.  Miessner was arrested on November 21, 2002.  Even assuming that a federal claim could be predicated on an error that is essentially a matter of state law, there is no claim here.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 14

were not based on probable cause.  Claims B, C, D, E, H, I, J, K, L, M, N, S, and the pertinent portions of O and P should be denied on the merits.

### B. Guilty Plea

#### 1. Voluntariness

A guilty plea must be the voluntary expression of the defendant's own choice.  See Brady v. United States, 397 U.S. 742, 748 (1970); Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986).  On the other hand, "[m]ere advice or strong urging by third parties to plead guilty based on the strength of the [prosecutor's] case does not constitute undue coercion."  Iaea, 800 F.2d at 867.  A guilty plea is not rendered involuntary even if the defendant makes the plea to avoid the death penalty.  See Brady, 397 U.S. at 746-47.  Additionally, a trial court is required to inform a defendant of the maximum possible penalties that he might incur on each of the charges to which he pleads guilty.  See Boykin v. Alabama, 395 U.S. 238, 244 n.7 (1969) (quoting Commonwealth ex rel. West v. Rundle, 237 A.2d 196, 197-98 (Pa. 1968)).

If Brady's plea to avoid the death penalty did not make his plea involuntary, certainly Miessner's guilty plea was not rendered involuntary by counsel's advice informing him that life imprisonment was the maximum possible penalty for aggravated kidnaping – that is, the charge that was reduced because Miessner pled guilty.  Nor was the voluntariness of the plea undermined by his attorney's opinion that his sentence likely would be harsher if he went to trial.  See Letter from McLaverty (07-34 doc. 2 Ex. H2).  Harsher sentences for those who go to trial and are found guilty as opposed to those who plead guilty are not unusual or unconstitutional.  See, e.g., Brady, 397 U.S. at 752 (recognizing that a "great many" guilty pleas are "motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge

or jury.").  Claims P and Q should be denied.

### 2. "Breach" of the Plea Agreement

Miessner's claims that the State breached the plea agreement are flatly contradicted by the record.  The State reduced the aggravated kidnaping charge to kidnaping, which reduced Miessner's exposure at sentencing from a maximum of life in prison or a term of two to 100 years to a term of two to 10 years.  <u>Compare</u> Mont. Code Ann. § 45-5-303(2) (2001)[7] <u>with</u> <u>id.</u> § 45-5-302(2).

### 3. DUI Charge

Miessner claims that the trial court could not proceed on the DUI charge because he was never arraigned on that charge.  Failure to provide an arraignment is not a jurisdictional defect.  A State is not constitutionally required to provide an "arraignment" at all.  "The Fourth Amendment requires every State to provide prompt determinations of probable cause" to support detention on criminal charges, "but . . . the Constitution does not impose on the States a rigid procedural framework."  <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 52-55 (1991) (discussing <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975)).

Nor did the fact that Miessner was not arraigned violate any other right that an arraignment generally secures – assuming, where the Supreme Court has not established it, that these rights are components of the Fourteenth Amendment's Due Process Clause.  There is no question that Miessner was aware of the charge, <u>see</u> Change of Plea Tr. at 3:22-25,[8] and that he intended to plead guilty to it, <u>see</u> <u>id.</u> at 5:6-9, 15:6-14.  His claim that he was "entrapped" into pleading guilty because

---

[7] When Officer Foster happened to knock on the door of Miessner's home, Miessner answered, and Stiefel cried out and came to the door with her hands taped together.  <u>See</u> Order ¶ 3, <u>Miessner</u>, No. 04-877.  Therefore, Miessner did not voluntarily release the victim and so did not qualify for the lesser penalty under § 303(2).

[8] <u>See</u> U.S. Const. Am. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation").

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 16

he entered a plea at a change of plea hearing rather than at an arraignment simply ignores his own statements at the hearing.  He was represented by counsel.  See Gideon v. Wainwright, 372 U.S. 335 (1963).  By the time the Amended Information was filed, Miessner was in custody on his probation revocation as well as on the other charges on which he had been arraigned, so there was more than probable cause for his detention.  There is no contention and no indication in the record that the arraignment was scotched for the purpose of obtaining incriminating statements from Miessner, see, e.g., McNabb v. United States, 318 U.S. 332, 343 (1943); Miranda v. Arizona, 384 U.S. 436, 446-47 (1966).  He does not refer to any statements that were obtained, and nothing in the record indicates that he gave any statements after November 21, 2002.  Under these circumstances, it is impossible for Miessner to claim any violation of his federal rights as a result of the fact that he was not arraigned on the DUI charge in April 2003.  Claim O should be denied.

### 4. Sentence

There is no meaningful distinction between conditions of probation and conditions of a suspended sentence under Montana law.  See Mont. Code Ann. § 46-18-201(3)(h), (4) (2001).  Therefore, there could be no federal due process violation.

The United States Supreme Court has never recognized a constitutional right for state prisoners to be orally advised at a sentencing hearing of every condition that will apply upon their release.  There is no such right even for federal prisoners.  See, e.g., United States v. Napier, 463 F.3d 1040, 1043 (9th Cir. 2006) ("[I]mposition of . . . mandatory and standard conditions is deemed to be implicit in an oral sentence imposing supervised release.").  Miessner has a federal right to notice of the conditions that he is expected to observe on release from imprisonment and an opportunity to challenge them.  Montana law provides a mechanism for challenging written

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 17

conditions that are not orally imposed.  See Judgment & Commitment (07-34 doc. 2 Ex. G4-7 ¶ 6, G8-9 "Notice").[9]  There is no colorable federal due process claim here.

Finally, the trial court's sentence did not "void" the plea agreement, because there was no written plea agreement stating that Miessner would be permitted to withdraw his guilty pleas if he was sentenced to something he did not expect.  The plea bargain constrained the trial court's sentencing authority only to the extent that the ten-year maximum sentence for kidnaping substituted for the previous maximum sentence of life for aggravated kidnaping.  Claim U(2) should be denied.

### 5. "Citizen's Arrest" Claim

Miessner claims that he lawfully arrested Stiefel on November 16 when he bound her hands with duct tape.  McLaverty wrote to Miessner:

> Your defense that you were doing the public a favor and making a citizen's arrest by duct taping her so that she could not drive drunk will not fly since the prosecution will point out that you could have taken or hidden the keys from her or called the police to stop her from driving.

Letter from McLaverty (07-34 doc. 2 Ex. H2).  "[I]n addition," McLaverty said, Miessner's "arrest" was "something a reasonable person would not do under the circumstances."  Id.; see also Mont. Code Ann. § 46-6-502 (2001) (requiring a showing that "the existing circumstances require the person's immediate arrest").

Further, according to Officer Foster's report, on which Miessner seeks to rely in other circumstances, Miessner did not "immediately notify the nearest available . . . peace officer" or "give custody of the person arrested to the officer," Mont. Code Ann. § 46-6-502(2), when Officer Foster

---

[9] The Montana Supreme Court has decided that sentencing conditions need not be orally recited at the sentencing hearing if it is clear that the defendant was aware of them, for example, from the presentence report.  See State v. Wiedrich, 112 P.3d 1054, 1057 ¶ 18 (Mont. 2005); State v. Johnson, 14 P.3d 480, 485 ¶ 24 (Mont. 2000).  Miessner does not claim he was unaware of any condition.  At any rate, any error in a discrepancy between written and oral sentence would at most be a matter of state law, for which federal habeas relief is not available.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 18

knocked on the front door.  In fact, Miessner said nothing at all about effecting an arrest.  See Foster

Report at 0032-0033.

You can do almost anything with duct tape, but no one could make a defense out of it in this

case.  No reasonable juror would have accepted Miessner's claim under these circumstances.  Claim

5 should be denied.

### 6. Violent Offender Registration Requirement

When Miessner submitted a copy of the transcript of his change of plea hearing, he contended

that the transcript showed that he was unaware of the requirement that he register as a violent

offender.  See Supp. Grounds (05-66 doc. 5) at 2.  While the transcript does show that, it also shows

that he was made aware of the requirement at the change of plea hearing and chose to proceed.  See

Change of Plea Tr. at 7:8-8:16.  His federal right to be advised of the direct consequences of his

guilty plea was fully honored.  See, e.g., Brady, 397 U.S. at 755; United States v. Littlejohn, 224

F.3d 960, 967 (9th Cir. 2000).  This claim should be denied.

### C. Irregularities in State Proceedings

No federal law was violated either by the parties' alleged failure to hold a scheduled

settlement conference or by the trial court's refusal to consider Miessner's pro se arguments in

support of withdrawing his guilty plea.  When Miessner asked for the appointment of new counsel,

the motion was granted, new counsel filed her own motion to withdraw the plea, and the trial court

considered and denied the motion.  No federal law required the trial court to consider Miessner's pro

se arguments, which have, in any case, been discussed and dismissed in Part III.A above.  Claims

F and R should be denied.

Miessner contends that the persistent felony offender designation was invalid because he was

not charged with an offense and he did not plead guilty to it. No federal law required the designation to be charged or proven beyond a reasonable doubt. "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (emphasis added), quoted in Blakely v. Washington, 542 U.S. 296, 301 (2004). Claim T should be denied.

Miessner claims that the trial court erred by failing to follow the appropriate procedures when a mandatory minimum sentence is imposed. However, Miessner was not sentenced to the minimum term on any of his convictions. By the terms of the applicable statutes, the procedures were not required. See Mont. Code Ann. §§ 46-18-222 (2001) (stating when exceptions to mandatory minimum sentences apply), -223(1) (requiring a hearing "[w]hen the application of an exception provided for in 46-18-222 is an issue"). Claim U should be denied.

Finally, the Information was not "defective" for accusing Miessner of "threatening to use physical force, with the purpose of inflicting bodily injury." The language draws directly on Mont. Code Ann. § 45-5-303(1) and specifies subsection (c). Miessner knew exactly what the charge was. Claim 6 should be denied.

### D. Probation Revocation

#### 1. Charge to Facilitate Arrest on Probation Violation

On November 21, 2002, Miessner was discovered asleep at the wheel of his vehicle parked in a stranger's driveway. At his probation officer's request, he took a breath test, which showed a blood alcohol level of 0.153. There was no need to level charges of aggravated kidnaping and partner/family member assault merely to support an arrest for a probation violation. Claim A is

frivolous and should be denied.

### 2. Double Jeopardy

A revocation is not a prosecution.  "An allegation that a sentence was imposed upon revocation of probation for one offense together with an allegation that a sentence was imposed for a separate offense, does not constitute a claim of two sentences for the same charge or double jeopardy."  Bible v. State of Arizona, 449 F.2d 111, 112 (9th Cir. 1971) (per curiam).  Punishment imposed on revocation is punishment for the original crime underlying probation, not for the conduct underlying the revocation.  See, e.g., United States v. Clark, 984 F.2d 319, 321 (9th Cir. 1993) (per curiam) (affirming trial court's imposition of consecutive sentences, one for violating terms of probation and one for violating terms of supervised release, based on one escape from community treatment center) (citing United States v. Redd, 759 F.2d 699, 700-01 (9th Cir. 1985) (per curiam), and Bible, 449 F.2d at 112).

In Miessner's case, the revocation of probation was punishment for his drug-related crimes in DC 95-117.  His sentences in DC 02-172 were punishment for kidnaping, partner/family member assault, and DUI.  Double jeopardy is not implicated.  Claims 1, 2, and 3 should be denied.

### 3. Petition to Revoke

The County Attorney's "misstatement" that a 911 call was made on November 16, 2002, does not affect the validity of the Petition to Revoke.  There is no indication that Judge Langton relied on a non-existent 911 call on November 16 to find a violation of any of Miessner's conditions of release or to revoke his suspended sentence.  No federal law supports Claim 4.  It should be denied.

### E. Claims Regarding Judge Langton

Miessner's claims against Judge Langton are wholly lacking in case-specific factual

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 21

allegations.  Claim 8 should be denied.

### F. Ineffective Assistance of Counsel Claims

No federal law was violated by the trial court's denial of Miessner's December 2002 request for new counsel.  Indigent defendants are entitled to counsel, but not to the counsel of their choice. See, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140, __, 126 S. Ct. 2557, 2561 (2006) (emphasis added).  Miessner has not shown any instance in which McLaverty was ineffective.  See generally Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  Nor has he shown that he had an irreconcilable conflict with McLaverty in December 2002.  On the contrary, Miessner stated under oath at his change of plea hearing that he was "satisfied with the advice and services [he] received" from McLaverty and that he believed McLaverty "represented [him] in a competent fashion." See Change of Plea Tr. at 13:13-19.  Given these statements, it is impossible for Miessner to show that his motion to disqualify McLaverty should have been granted in December 2002. Moreover, it is not uncommon for defense counsel to disagree about serious issues, as Brownlee disagreed with McLaverty regarding Miessner's guilty plea.  Disagreement alone provides no basis for a claim of ineffective assistance of counsel.

Like Miessner's claims against Judge Langton, his claims against McLaverty and Montana defense counsel in general are wholly lacking in factual allegations specific to his case.  Claims G, 7, and 9 should be denied.

## IV. Certificate of Appealability

### A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 22

v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).

The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits. The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit. Lambright, 220 F.3d at 1025. Any doubt as to whether a petitioner has met the standard is resolved in his favor. Id.

The COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1) (emphasis added).

**B. Discussion**

Miessner presents numerous claims. None of them makes even a colorable showing of a violation of federal law. His claims are based either on unwarranted assumptions about his federal rights or exaggeration or omission of the central facts. After reviewing all of the voluminous documents that Miessner submitted, no reasonable jurist would find that he has made any showing,

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 23

much less a substantial one, that his federal rights were violated.  A COA is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

Both petitions (CV 05-66 & CV 07-34 doc. 1) should be DENIED on the merits.  A certificate of appealability should be DENIED.  The Clerk of Court should be directed to enter judgment by separate document in both cases in favor of Respondents and against Petitioner Miessner.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Miessner must immediately advise the Court of any change of address.  Failure to do so may result in dismissal of these cases without notice to him.

DATED this 30th day of April, 2008.

    /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 24